**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KATHRYN L. McCAULEY,** | |
| Plaintiff, | Case No. 10 C 2839 |
| v. | |
| **AKAL SECURITY, INC. and UNITED STATES MARSHALS SERVICE,** | Hon. Harry D. Leinenweber |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND**

The Plaintiff, Kathryn L. McCauley (hereinafter, "McCauley" or "Plaintiff"), was a Court Security Officer ("CSO") in the employ of the Defendant, Akal Security, Inc. ("Akal"). Akal had a contract with the United States Marshals Service (the "Marshals Service") to provide security at the Dirksen Federal Courthouse. Under its Agreement with the Marshals Service, all courthouse employees of Akal must be credentialed by the Marshals Service. *See,* Marshals Service Ex. 3, ¶ H, 3(b). At the time McCauley began work at the Dirksen, Akal had received the appropriate credentials for her from the Marshals Service. During her employment at Dirksen, McCauley performed a variety of tasks as a security officer, including bailiff like duties in a courtroom and participating in the operation of the security stations in the Dirksen lobby. As a CSO,

she was obligated to adhere to certain performance standards issued by the Marshals Service and she signed certificates to that effect. Among the prohibitions was engaging in discussions with juries on government matters.

In June 2008, an Assistant United States Attorney reported to a United States District Judge hearing a criminal trial, that McCauley had made inappropriate comments to the jurors assigned to the trial to the effect that the defendants in that trial were in custody and that the jurors were to be civil with each other. As a result of these charges, an investigation was conducted by McCauley's supervisor and a hearing was held before the Judge who took testimony from the jury foreman. The result of the investigation and the hearing was to sustain the finding that she had told the jurors to be civil to one another, but had not told them the defendants were in custody. As a result, McCauley was not disciplined.

On March 18, 2009, at a point between 8:00 a.m. and 8:45 a.m. while performing screening services in the Dirksen lobby, McCauley made a statement to a fellow CSO, John Sullivan, who was also performing screening services, that she "could not believe that Sanchez took the stand," in reference to a criminal defendant in an ongoing criminal trial before another District Judge. After making the statement, an individual standing in the immediate vicinity, apparently believing that McCauley's remarks were directed to him,

stated to McCauley, "I can't talk to you." McCauley responded, that she "was not talking to [him]." The individual happened to be a member of the Sanchez jury, and he reported the conversation to the Judge hearing the Sanchez case. A hearing was held that day before the Judge who questioned the juror about McCauley's remarks. The juror testified that he was a foot and half away from McCauley when she said to him "I'm surprised that Sanchez took the stand yesterday. I thought defendants never took the stand." McCauley subsequently met with a CSO Supervisor and her union representative to discuss the incident so a report could be prepared. McCauley's written statement was included in the report in which she admitted the following: "I had commented to CSO Sullivan who was at the rail position that I could not believe that Sanchez took the stand. After speaking to CSO Sullivan, an unknown individual made a statement, 'I can't talk to you.' It was clear that the individual was eavesdropping. I told the individual that I was not speaking to him. He then turned and left the lobby north area." The date of this statement was March 18, 2009.

On March 29, 2009, Akal received a request from the U.S. Department of Justice Contract Officer to investigate McCauley for violations of the CSO Performance Standards and to remove McCauley from all CSO activity pending the outcome of the investigation. As a result Akal, suspended McCauley pending the investigation. On March 24, 2009, Akal's Contract Manager met with McCauley and her

union representative. Following this meeting, the manager prepared a report concerning the alleged violation. The report was in a question and answer form concerning the incident. She was given a chance to review the report and make any corrections. Also, during this meeting a second written statement was prepared regarding the incident with the juror. McCauley was given an opportunity to review it and make any corrections before she was asked to sign it. She made no corrections before signing it. The statement read:

> On March 18, 2009, I was working the screening area on the ground floor of the building on the north end. I was working with CSOs Sullivan and Fitzpatrick. A subject came through the screening and was collecting his personal affects *[sic.]*. I made the comment to CSO Sullivan that I couldn't believe that Sanchez had taken the stand in his behalf. I was speaking to CSO Sullivan, not the subject that had just been screened. After I made the statement, an unknown subject made the statement that "I can't talk to you." The subject may have been eavesdropping. I told the subject that I was not speaking to him. He then left the area. He never represented himself as a member of a jury nor did he make any other statements.

Neither of McCauley's statements included any assertion that CSO Sullivan verbally responded to her Sanchez comment. However, McCauley alleges that in a preliminary conference with the Contract Manager, she stated that CSO Sullivan responded to her statement to the effect that "he was stupid." As a result, the Contract Manager met with CSO Sullivan and took his statement. He was specifically asked if he responded to McCauley and he stated that "I didn't

discuss it with her." He signed a written statement to this effect. (Although not relevant to this decision, the juror was deposed during discovery and could not recall the male CSO who was present on March 18, 2009 saying anything.) Akal's investigation resulted in a finding that McCauley's comment was in violation of the CSO Performance Standards.

On March 30, 2009, Akal sent a letter to the Marshals Service informing it that Akal had conducted an investigation and concluded that making the comment in the presence of a juror was a violation of the CSO Performance Standards, but that because McCauley had not received prior disciplinary action, it requested that McCauley be allowed to resume CSO duties. However, pending the Marshal Service's approval, McCauley was to be given a thirty (30) day suspension and a Final Warning. The Marshals Service responded to Akal on April 3, 2009, disagreeing with Akal's proposed discipline and withdrew her credentials. It directed Akal to remove her permanently from performing under the CSO contract. On the same day Akal informed McCauley of the Marshals Service's decision and that she was discharged. Akal also informed her of her appeal rights under Akal's contract with the Marshals Service.

On April 14, 2009, McCauley, through her attorney, Laurence Beaumont, submitted a written response to her removal to Akal, who forwarded it to the Marshals Service. The Marshals Service on April 22, 2009, denied her appeal and affirmed its decision that

McCauley be permanently removed. McCauley was informed on the same day that her removal was permanent.

As result of her discharge McCauley filed a timely charge with the Equal Employment Opportunity Commission (the "EEOC") against Akal alleging sex discrimination as a result of her discharge. She did not name the Marshals Service because, she contends, the EEOC told her that she was not an employee of the Federal Government. She did not initiate and/or exhaust Federal-Sector Administrative Remedies as required of federal employees under a special provision in Title VII governing claims of discrimination by federal employees. She acknowledges that she did not do so, but asks to be excused on the ground that she was unaware of this requirement and the Marshals Service did not advise her of this requirement.

## II.  **DISCUSSION**

Both Akal and the Marshals Service have moved for summary judgment.

### A.  **The Akal Motion**

Akal moves for summary judgment contending that McCauley cannot prove sex discrimination by either the direct or indirect method. Since McCauley does not claim to have proof under the direct method she must proceed under the indirect method. As she points out, to proceed under the indirect method, she must introduce evidence that (1) she is a member of a protected class; (2) her job performance met the employer's legitimate expectations;

(3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than McCauley. *Burks v. Wisconsin Dep't of Transportation,* 464 F.3d 744, 750-51 (7th Cir. 2006). Akal spends a lot of its brief arguing that McCauley was not performing up to Akal's legitimate expectations, citing both the 2008 and the 2009 incidents. McCauley responds pointing out that she was found not to have committed any performance standard violations in the 2008 incident, and the severity of her conduct in the 2009 incident was exaggerated. She points to the fact that Akal requested that the Marshals Service keep her on as a CSO which she claims shows that she was meeting their expectations.

Unfortunately for McCauley this last argument undermines her claim of sex discrimination on the part of Akal. It is clear that by seeking permission from the Marshals Service to keep her employed, Akal could not be guilty of sex discrimination. Akal discharged her because the Marshals Service had a contractual right to insist that all CSO's be credentialed by it and, after her credentials were removed, Akal had no choice but to discharge her. It therefore could not be guilty of sex discrimination under Title VII. Accordingly, Akal's Motion for Summary Judgment is granted.

**B. The Motion of the Marshals Service**

The first argument made by the Marshals Service is that McCauley, who it concedes was an employee of the Marshals Service for purposes of bringing a Title VII claim of sex discrimination, failed to abide by the prelawsuit requirements of Title VII found at 42 U.S.C. § 2000e-16 that she must initiate and/or exhaust the administrative remedies. Similar to the requirement that a private sector plaintiff must file with the EEOC, the purpose of the exhaustion requirement is to give federal agencies the opportunity to resolve matters internally and to avoid lawsuits. McCauley asks to be excused from this statutory obligation, contending that the Marshals Service took no steps to notify her of the exhaustion requirements, including the failure to post any notices of the requirements. She cites 29 C.F.R. § 1614.105 and *Johnson v. Runyon,* 47 F.3d 911 (7th Cir. 1995), which extends the 45-day time limit when an individual shows that she was not notified of the time limits and was not otherwise aware of them. Here McCauley states that she was unaware of the notice requirements and that she tried to initiate a claim against the Marshals Service with the EEOC but was told that she was not an employee of the Marshals Service and therefore could not file a claim of discrimination against it. However, because McCauley cannot make a claim of discrimination against the Marshals Service under Title VII's indirect method, her failure to exhaust need not be decided.

The Title VII requirement to establish a *prima facie* case of discrimination applies to McCauley's claim against the Marshals Service the same as against Akal. While she can establish that she is in a protected category (female) and was the recipient of an adverse employment action (dismissal) she cannot establish the remaining two prongs that she was meeting the legitimate performance expectations and that a similarly situated male employee was treated more favorably by the Marshals Service. While she disputes that she violated the CSO Performance Standard, she was found to have done so by her employer, Akal. She seems to argue that she was not guilty of engaging in a discussion with a juror because she did not intend to do so. However, the juror obviously thought she was engaging him in conversation about a defendant taking the stand in the case the juror was considering. Intent is not required to violate a performance standard. The fact of the matter is that she made a comment in the presence of a juror who thought she was addressing him. Certainly an experienced CSO knows that jurors will be entering the courthouse through the screening stations along with others and that there is no special adornment that sets jurors apart from other citizens. The Marshals Service was entitled to rely on the investigation carried out by Akal, McCauley's employer.

McCauley next argues that CSO Sullivan, to whom she directed her remarks, responded that "[Sanchez] was stupid," and, unlike

- 9 -

she, he was not disciplined. Therefore she claims that she was treated less favorably than her male colleague. The problem with this argument is that the juror only complained to the judge about McCauley's remarks. Moreover, after McCauley made her charge that CSO Sullivan made a response to her comment, Akal conducted an investigation and determined that CSO Sullivan did not participate in the conversation. The Marshals Service was also entitled to rely on this investigative finding. In short, the Marshals Service was entitled to rely on its contractor Akal to supply it with the information upon which it acted. Furthermore, McCauley cannot show that a white male (CSO Sullivan) was treated more favorably. McCauley was cited by a juror, who did not, when appearing before the trial judge, implicate anyone other than McCauley. The juror's charge was corroborated by McCauley herself. McCauley's charge that CSO Sullivan was involved in the conversation over the defendant testifying in his own defense was denied by Sullivan and therefore uncorroborated. Accordingly, The Marshals Service's Motion for Summary Judgment is granted.

III. **CONCLUSION**

For the reasons stated herein, Defendants' Akal Security, Inc. and the United States Marshals Service Motions for Summary Judgment are granted.

**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

**DATE:** September 26, 2013